## WESTERN UNION TELEGRAPH COMPANY *v.* MULKEY.

### Opinion delivered April 26, 1915.

TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—MENTAL ANGUISH.—
P. sent a message to M., advising M. of his father's death. M. replied, asking P. to send him funds to come to Arkansas to attend the funeral. This message was not delivered. Shortly thereafter M. raised sufficient funds, and wired that he was coming. The message was delivered to M.'s brother and not to P., the addressee, but the funeral was not delayed awaiting M.'s arrival. *Held*, under the facts, no case of negligence was made out against defendant telegraph company, and that neither P. nor M. could maintain an action for damages for mental anguish.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; reversed.

*Martin, Wootton & Martin, Geo. H. Fearons* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellant.

1. The Arkansas mental anguish statute is void as to interstate messages, and the court should have directed a verdict for defendant in both cases. *Western Union Tel. Co. v. Brown,* 234 U. S. 542; *Western Union Tel. Co. v. Compton,* 114 Ark. 193; *Western Union Tel. Co. v. Johnson,* 115 Ark. 564.

2. The alleged mental anguish of Pevia is not such as may be the basis for recovery under the terms of the Arkansas statute. ''The court must take the construction which common sense and experience adjudges should be given to the terms describing such elements of damage.'' 83 Ark. 39.

No brief filed for appellees.

McCULLOCH, C. J. These are two consolidated actions instituted by Leonard Mulkey and Fred Pevia, respectively, against the Western Union Telegraph Company to recover damages alleged to have been sustained by reason of negligent failure to deliver a telegram sent from one of the plaintiffs to the other. The facts are undisputed. Plaintiff Mulkey resided at Chattanooga, Tenn., and his father died at Malvern, Arkansas, on March 25, 1914. Plaintiff Pevia was a son-in-law of the elder Mulkey and also resided at Malvern. Two brothers of deceased also resided at Malvern, and two sons—brothers of plaintiff Leonard Mulkey. On the afternoon of March 25, Pevia sent a telegram to Leonard Mulkey, informing the latter of his father's death, and later in the afternoon sent another telegram informing him that the body, which had been embalmed, would be interred at Mineral Springs, Howard County, Arkansas, on March 27. The last of those messages was delivered to the addressee at night on the 25th, and at 8:35 o'clock the next morning Leonard Mulkey filed with defendant company the following message, addressed to Pevia at Malvern:

''Can't come unless you send me money.''

The nondelivery of this message is the basis of each of the actions. The message was received by the operator at Malvern at 9:10 o'clock A. M. Pevia lived about a half-mile from the telegraph office, and had no telephone in his residence. The body of deceased was removed from Malvern on that morning and taken to Nashville, Arkansas, the funeral party reaching Nashville during the afternoon and remaining there that night. The next morning, March 27, the remains were taken out to Mineral Springs and interred about 3 o'clock in the afternoon. Pevia was sick on the morning of the 26th, and did not accompany the funeral party nor go to the station to see them off. He remained at home. The other relatives, including the two brothers of deceased and his two sons, were at the station and accompanied the remains. The train was scheduled to leave at 9:05, but was an hour or more late. Pevia sent a messenger to the telegraph office at 7 o'clock in the morning to inquire for a message, but made no further inquiry after that time. All of the members of the funeral party knew of the telegram sent by Pevia to Leonard Mulkey, and were expecting to hear from the latter, and one of the brothers, O. B. Mulkey, made inquiry of the telegraph operator concerning the expected message from Leonard Mulkey. When the message came, the operator delivered it to O. B. Mulkey, who promised to send it out to Pevia, or try to do so. He opened the message and read it and informed the other members of the party of its contents, but the message was not sent out to Pevia.

Plaintiff Mulkey, after filing the message, decided to raise the necessary funds by his own efforts, and did so by selling some of his furniture and borrowing the balance of the amount from his employer. After securing the funds, he filed another message with the company at 9:40 A. M. on March 26, addressed to Pevia, containing the following words: "Will be there tomorrow." That message was received in due time, but after the funeral party had left Malvern, and it was delivered to Pevia, who read it, but did not communicate its contents by telegraph or

otherwise to the funeral party after they reached Nashville. Plaintiff Mulkey left Chattanooga at 10 o'clock on the night of March 26, but did not reach Arkansas in time to attend the funeral of his father.

Both of the plaintiffs claim that they suffered mental anguish by reason of the nondelivery of the telegram, but we are of the opinion that in neither of the cases is the evidence sufficient to sustain the verdict. So far as the case of plaintiff Mulkey is concerned, it is manifest that the failure to deliver the message to Pevia was not the proximate cause of the mental anguish which resulted from his inability to attend his father's funeral. This is true for more than one reason. In the first place, if the message had been delivered to Pevia as promptly as it could have been done, he could not have replied to it in **time to forward the money**, even in the most expeditious way, so that Mulkey could have gotten it before he did in fact get it from other sources. There is no claim that the message was delayed in transmission, and the undisputed evidence is that it reached Malvern at 9:10 o'clock. Now, Pevia had no telephone at his residence, and if the message had been sent out according to the customary method by the messenger boy in the office, he would have had to go a distance of nearly a half-mile, and then return with the reply. There was only a space of thirty minutes between the receipt of the message at Malvern and the time that Mulkey sent the second message, after having raised the necessary funds, so it is obvious that during that short space of time the money could not have been sent to Mulkey before he actually raised it from other sources.

Whatever delay there was in preparation for his journey to Arkansas to attend the funeral, was brought about by the procrastination of Mulkey himself, and, according to the evidence, he made no move toward getting the money until after he had filed the message with the company at 8:35 o'clock, asking Pevia to send him the money. As soon as he raised the money, he sent the message to Pevia informing the latter that he would start for

Arkansas on the first train, and expected to reach Malvern the next day. Pevia made no effort to communicate with the funeral party so as to postpone the funeral, and there is no reason to suppose that the situation would have been changed if the first message had been delivered to Pevia. Another reason is that the message was in fact delivered to O. B. Mulkey, a brother of plaintiff Mulkey, and its contents were communicated to the others composing the funeral party. They received all the information from it that Pevia would have received, and if they had desired to postpone the funeral in order to hear from the absent one they could have done so. It is extremely doubtful whether a charge of negligence can rightfully be made against the operator for delivering the message to O. B. Mulkey, in view of the fact that he was more closely related to the sender than the addressee was, and was there at the station and was one of the funeral party about to leave on the expected train. The failure of the company to deliver the message to Pevia was therefore not the cause of Mulkey's distress or mental anguish, but that condition resulted from his own delay in making necessary preparation to come to Arkansas, or from the failure of his relatives in charge of the remains of the deceased to postpone the funeral so that he could reach there.

It is very plain that Pevia can not recover, for he has not proved any mental anguish as an element of damages within the meaning of our statute on the subject. The most that can be said of his case is that he was deprived of the privilege of sending his co-plaintiff and brother-in-law the money to use in coming to Arkansas. He did not attend the funeral himself, and the failure to deliver the message did not deprive him of any privilege in that respect. His brother-in-law was not to come to offer any solace to him, but to attend the funeral, and there is no conceivable phase of the case that would admit of the view that he was deprived of anything that caused him to suffer mental anguish within the meaning of the statute.

Both cases are entirely without merit, according to the undisputed evidence, and the judgments are reversed and the causes dismissed.